**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

|   |   |   |
|---|---|---|
| | § | |
| | § | |
| In Re: NORMAN SILVERMAN | § | CASE NO. 4:19-MC-4 |
| TEXAS STATE BAR #00792207 | § | |
| | § | |

### MEMORANDUM AND ORDER SUSPENDING ATTORNEY NORMAN SILVERMAN

Before the court is the matter of Attorney Norman Silverman's ("Silverman") privilege to practice law in the Eastern District of Texas.  On January 14, 2019, it was brought to the court's attention that, on May 18, 2016, Silverman's right to practice law before the Western District of Pennsylvania was revoked.[1]  This revocation followed Silverman's failure to pay monetary sanctions in the amount of $4,300.00 which were imposed by the Pennsylvania judge after Silverman repeatedly displayed "a lack of respect for the authority of the Court, a lack of respect for the jury's time and a seeming lack of understanding of the judicial process."[2]  On January 15, 2019, it was brought to the court's attention that, on January 31, 2018, Silverman was suspended from practicing law in the Western District of Texas for 120 days after admitting to the court that he was unprepared to proceed to trial in a criminal case and that he was providing ineffective assistance of counsel to his client.  *See United States v. Nguyen*, Case Number 5:13-580-5.  On January 16, 2019, this court issued an order directing Silverman to show cause as to why the identical discipline should not be imposed in this district pursuant to Local Rule AT-2(b)(2).  On

---

[1] Silverman was admitted to the Western District of Pennsylvania *pro hac vice* to represent Defendant Mayank Mishra ("Mishra") in Case Number 2:12-cr-00092-C, *United States v. Richard Bush and Mayank Mishra*.

[2] Silverman failed to appeal the contempt order and monetary sanction.  *See United States v. Mishra*, No. 2:12-cr-00092-C, 2016 WL 2895118, at *1 (W.D. Pa. May 18, 2016).

February 11, 2019, Silverman, through counsel Edwin Gerald Morris, filed a written response. On February 15, 2019, the court held a hearing, asked questions, received information, and heard arguments presented by counsel for Silverman.[3]  Silverman submitted additional briefing on February 22 and 25, 2019.   Having considered the written record of the proceedings in the Western District of Pennsylvania and the Western District of Texas, Silverman's written responses, the information gathered at the hearing, the argument presented by counsel, and the applicable law, the court is of the opinion that reciprocal discipline is warranted and that Silverman should be:  (1) suspended from practicing law in the Eastern District of Texas for 120 days; (2) removed from the representation of James Morris Balagia ("Balagia") in Case Number 4:16-cr-176 and Arturo Elizondo ("Elizondo") in Case Number 1:17-cr-153; and (3) removed from the roll of attorneys admitted to practice in the Eastern District of Texas and not permitted to seek re-admission until the latter of the expiration of 120 days from the date of this order or the resolution of any additional disciplinary procedures which may be taken pursuant to this court's report to the Chief Judge for the Eastern District of Texas in accordance with Local Rule AT-2(d)(2)(A).

I.    Background

    A.    Western District of Pennsylvania

    On December 6, 2013, Silverman filed a motion for leave to appear *pro hac vice* in Case Number 2:12-cr-00092-C, *United States  v. Mishra*, in the Western District of Pennsylvania.   On March 12, 2014, the court granted Silverman's motion.  On December 2, 2015, a jury trial began

---

[3] Silverman invoked his Fifth Amendment privilege against self-incrimination at the hearing, and no testimony was taken under oath from any participant.

before the Honorable Judge Cathy Bissoon ("Judge Bissoon").   From the outset of the trial, Silverman repeatedly violated the court's pre-trial evidentiary orders.   According to Judge Bissoon's February 9, 2016, order, and as confirmed by selected excerpts from the trial transcript, Silverman also failed to label his exhibits in advance of trial, failed to have a working copy of the government's exhibits at hand, did not limit his cross-examination of witnesses to the scope of their direct examination, and frequently continued the same line or character of questions after the court sustained a non-form objection.   On December 7, 2015, Silverman's conduct reached a breaking point.   From the trial transcript it appears that had Silverman's co-counsel been prepared to try the case, Judge Bissoon would have revoked Silverman's *pro hac vice* status mid-trial and possibly placed him in jail.   As it happened, co-counsel, Daphne Silverman ("Daphne"), represented to Judge Bissoon that she was unprepared to try the case in Silverman's absence, so Silverman's representation of Mishra continued.   Over the entirety of the trial, which ended on December 18, 2015, Silverman accumulated $4,300.00 in sanctions as a result of his unprofessional conduct.

On February 9, 2016, Judge Bissoon issued a written order summarizing her oral orders, finding Silverman in contempt of court, and sanctioning him $4,300.00.   In addition to summarizing Silverman's misconduct, the written order provides legal authority to support Judge Bissoon's decision to find Silverman in contempt of court as a result of his conduct during the trial.   On March 15, 2016, after it became apparent that Silverman would not pay the sanction, the Government filed a motion requesting that the court issue an Order to Show Cause why Silverman's *pro hac vice* status should not be revoked for his failure to comply with the court's contempt order.   On March 16, 2016, Judge Bissoon ordered Silverman to respond to the

3

Government's motion on or before March 25, 2016.  On March 16, 2016, Silverman filed a motion seeking additional time to file a response to the Government's motion.  The court granted Silverman's request and extended the deadline for responding to April 25, 2016.  On April 21, 2016, attorney Alexander Lindsay Jr. ("Lindsay") filed a notice of appearance stating that he would be representing Silverman.  The same day, Lindsay requested a second extension of the deadline to file a response to the Government's Motion.  The court extended the deadline by one week.  On May 2, 2016, Lindsay filed Silverman's responses.  The gravamen of the responses is that the court's summary disposition finding Silverman in criminal contempt failed to comply with Federal Rule of Criminal Procedure 42(b) and should be vacated.  Silverman's responses took the position that Rule 42(b) requires the court to issue a written contempt order contemporaneously with the contemptuous conduct.[4]  Silverman did not brief the merits of the issue of whether his *pro hac vice* status should be revoked.[5]

On May 18, 2016, Judge Bissoon issued an order revoking Silverman's *pro hac vice* admission pursuant to the court's inherent authority.  The court rejected Silverman's request to vacate its contempt order on the grounds that Silverman failed to appeal the order in a timely manner and, therefore, the court lacked jurisdiction to vacate the order.  The court noted that Silverman "continue[s] to view this Court's Orders as recommendations or guidelines, as opposed

---

[4] Nothing in the text of Rule 42(b) requires a *contemporaneous* written order.  *See* FED. R. CRIM. P. 42(b) ("Notwithstanding any other provision of these rules, the court (other than a magistrate judge) may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies . . . The contempt order must recite the facts, be signed by the judge, and be filed with the clerk.").

[5] Silverman filed two responses.  The first response sought to vacate the contempt order.  The second response argued that because the contempt order was invalid the revocation of his *pro hac vice* status was moot.

to what they are, mandates from the Court." On May 25, 2016, Silverman paid the $4,300.00 contempt sanction. Silverman has not appealed any of the Western District of Pennsylvania orders. At no point did Silverman advise the Clerk of the Court for the Eastern District of Texas of this discipline as required by Local Rule AT-2(b)(3).

   B.   Western District of Texas

   On July 5, 2013, Silverman filed a notice of appearance on behalf of Dung Nguyen ("Nguyen") in *United States v. Nguyen*, Case Number 5:13-cr-580-RCL-5, in the Western District of Texas. After an extensive pre-trial period during which little was accomplished,[6] the case was finally set for trial to begin on January 9, 2017. On December 21, 2016, Silverman filed a motion requesting that the court continue the trial date, wherein he stated that for various reasons, he was unprepared to proceed to trial. On December 22, 2016, the court denied the motion. On January 2, 2017, Silverman filed a motion requesting the court to reconsider his request for a continuance or alternatively to permit him to withdraw. At the January 4 and 5, 2017, hearings on the motion to reconsider, Silverman acknowledged that his continued representation of Nguyen likely bordered on ineffective assistance of counsel in light of his wife, Daphne's, health problems, which had caused him to neglect his client's case. The transcripts of these hearings reflect that the court had serious doubts about the veracity of Silverman's explanation in light of the fact that he had represented Nguyen for three years but was still contending that he was unprepared for trial as a result of Daphne's relatively recent health problems. In fact, the court suggested that the

---

[6] In the approximately three years between the time Silverman first appeared in the case and the time he withdrew, Silverman filed only two substantive motions, a motion for a bill of particulars and a motion to dismiss, in September and November 2015. (Doc. Nos. 695 & 697). In the five days between the time when the court granted Silverman's motion to withdraw and actually removed him from the docket, Silverman filed motions to suppress, to dismiss, and three different motions for discovery. (Doc. Nos. 946, 949, 950, 951, & 952).

motion to continue was merely a "tactical ploy" and part of Silverman's "maneuvering." (Doc. No. 959 at 7). Nevertheless, the court permitted Silverman to withdraw and continued the case, after which Nguyen was represented by another attorney.

On January 9, 2017, Judge Royce Lamberth, sitting by designation in the Western District of Texas, sent a memorandum to the Chief Judge of the Western District of Texas, Orlando Garcia, outlining his concerns about Silverman's conduct and recommending the initiation of disciplinary proceedings. On January 23, 2017, Silverman received notice that disciplinary proceedings were pending against him in the Western District of Texas. On February 9, 2017, Silverman filed a written response to the Western District of Texas disciplinary committee. The committee scheduled a hearing for May 22, 2017. Silverman did not appear or provide the committee notice that he would not be present. After waiting 30 minutes, the committee called Silverman who provided several excuses, including an infection, not receiving the email notice of the hearing, and not receiving the paper mail notice of the hearing. The committee agreed to reschedule the hearing. On June 27, 2017, Silverman appeared in person before the disciplinary committee. Following the hearing, the committee issued its report and recommendation to Chief Judge Garcia on September 6, 2017. Silverman filed a response and objection to the committee's proposed findings and discipline. On January 31, 2018, Judge Garcia issued an order suspending Silverman from practicing law in the Western District of Texas for 120 days. At no point did Silverman advise the Clerk of the Court for the Eastern District of Texas of this discipline as required by Local Rule AT-2(b)(3), although at the time, he was actively representing clients in the Eastern District of Texas and even appeared in a new case a mere 23 days after the Western

6

District of Texas issued the order suspending him.  *See United States v. James Morris Balagia*,

Case Number 4:16-cr-176-3; *United States v. Arturo Elizondo*, Case Number 1:17-cr-153-2.

    C.    <u>Other Failures to Disclose</u>

    It has also come to the court's attention that after Silverman was disciplined by the Western

District of Pennsylvania and Western District of Texas, Silverman failed to disclose fully his past

disciplinary proceedings when applying for admission *pro hac vice* to another court.  Particularly,

on November 27, 2017, Silverman applied, and was admitted *pro hac vice*, in the Western District

of Louisiana in Case Number 5:17-cr-163, *United States v. Rodolfo Baires*.  Based on the publicly

available record, it appears that Silverman did not disclose any of the above-referenced discipline.

On December 14, 2017, Silverman applied, and was admitted *pro hac vice*, in the Western District

of Louisiana in Case Number 5:16-cr-132, *United States v. Erasmo Aviles*.  In his application,

Silverman disclosed the pending discipline in the Western District of Texas, but failed to disclose

the discipline in the Western District of Pennsylvania.[7]

    At the show cause hearing, Silverman represented to the court that he fully disclosed the

pending discipline in the Western District of Louisiana when he sought admission in *United States*

*v. Baires*, but the attachment was filed under seal by local counsel.  The court contacted the

Western District of Louisiana and was informed that there were no sealed attachments included

with the motion.  Further, on the face of the motion, Silverman states:  "There have been no

disciplinary proceedings or criminal charges instituted against me."  The Appendix filed by

Silverman in this proceeding (#5) contains a disclosure, but it is not file stamped with any case

---

    [7] Nevertheless, on July 26, 2018, Silverman applied, and was admitted *pro hac vice*, in the Western District of North Carolina in Case Number 3:18-cr-239, *United States v. Juan Jose Benton*.  In his application, Silverman disclosed both of the above disciplinary proceedings.

7

number.  In Silverman's Second Supplemental Response (#16), counsel withdrew the representation that the disclosure was filed in *United States v. Baires*.

II.     Analysis

    A.      Motions to Disqualify

On February 15, 2019, the morning of the show cause hearing, Silverman filed a Motion to Disqualify the undersigned (#8), pursuant to 28 U.S.C. § 455(a).  On February 22, 2019, Silverman filed a Second Motion to Disqualify the undersigned (#13), pursuant to 28 U.S.C. § 455(a) and (b).  In support of this motion, Silverman relies on the Government's filing in *United States v. James Morris Balagia*, Case Number 4:16-cr-176-3.  (Dkt. No. 255).  At the time Silverman filed the motions, the undersigned was the presiding judge in the Balagia case.  The case has since been transferred to the docket of Judge Amos Mazzant.  Silverman and Daphne represent Defendant Balagia.  Silverman maintains that the Government's filing is nothing more than a brief arguing that Silverman and Daphne should be suspended and removed from the case.  At the hearing, the court made it clear that although it was aware of the filing, the court had not read it and would not consider it in these proceedings.  Nevertheless, Silverman avers that the Government has put the court in such a position that its impartiality may be questioned and, therefore, the undersigned should recuse herself from these proceedings.  Having considered the motion, the record, and the applicable law the court is of the opinion that the motion should be denied.

The test for recusal under § 455(a) is whether a reasonable person knowing all the circumstances would harbor doubts about the judge's ability to be impartial.  28 U.S.C. § 455(a); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988); *Chitimacha Tribe of La.*

8

*v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983).

Applying this standard in the context of attorney discipline proceedings is difficult given the fact

that the court must serve both an investigatory and adjudicative role.  *See Manez v. Bridgestone*

*Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("[T]he court has the inherent

power to conduct proceedings to investigate."); *Crowe v. Smith*, 151 F.3d 217, 234 n.23 (5th Cir.

1998) ("If we . . . allow the district court a workable way to investigate [attorney discipline]

matters, we must accept the admittedly unusual fact of attorney testimony as part of the bargain.").

When applying the recusal standard in an attorney discipline or sanction proceeding the question

is whether there is "such a likelihood of bias or an appearance of bias that the judge was unable

to hold the balance between vindicating the interests of the court and the interests of the accused

[attorney]." *Spruell v. Jarvis*, 654 F.2d 1090, 1095 (5th Cir. 1981) (quoting *Taylor v. Hayes*, 418

U.S. 488, 501 (1974)); *see Mayberry v. Pennsylvania*, 400 U.S. 455, 466 (1971); *Ungar v.*

*Sarafite*, 376 U.S. 575, 588 (1964).  Nevertheless, "[a]ctions taken, and knowledge acquired, by

a judge in the performance of his judicial functions ordinarily cannot form the basis for recusal."

*In re Mitchell*, No. 4:03-MC-004-A, 2003 WL 21746254, at *2 (N.D. Tex. July 3, 2003); *see*

*Liteky v. United States*, 510 U.S. 540, 554-56 (1994) ("[O]pinions formed by the judge on the

basis of facts introduced or events occurring in the course of the current proceedings, or of prior

proceedings, do not constitute a basis for a bias or partiality motion unless they display a

deep-seated favoritism or antagonism that would make fair judgment impossible."); *United States*

*v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *Curl v. Int'l Bus. Machs. Corp.*, 517 F.2d 212, 214

(5th Cir.1975).

9

Here, the discipline imposed on Silverman by other federal courts was brought to this court's attention by the Government.[8]   In response, this court conducted an independent investigation by accessing publicly available records as well as requesting documents and information from the Western District of Texas and the Western District of Louisiana.   After determining that Silverman had, in fact, been disciplined in other federal courts, this court issued a show cause order directing Silverman to respond.   Silverman was provided ample opportunity to submit evidence and argument as to why reciprocal discipline should not be imposed by the Eastern District of Texas.   This court has limited its consideration in this matter to the information discovered through its independent investigation, this court's legal research, and the information, authorities, and arguments presented by Silverman.[9]   Even if the court had considered the Government's filings, that would not form a basis to question the impartiality of this court.   *See Liteky*, 510 U.S. at 554-56.   In sum, a reasonable person knowing *all the circumstances* would not question the court's impartiality.   Therefore, Silverman's Motion to Disqualify the undersigned (#8) and Silverman's Second Motion to Disqualify the undersigned (#13) are DENIED.

B.    Reciprocal Discipline

Local Rule AT-2(b)(1) provides:

Except as otherwise provided in this subsection, a member of the bar of this court shall automatically lose his or her membership if he or she loses, either temporarily or permanently, the right to practice law before any state or federal court for any reason other than nonpayment of dues, failure to meet continuing legal education

---

[8] These advisories to the court are at the center of Silverman's motions to disqualify.   Silverman, however, ignores the fact that this *ex parte* communication would not have been necessary had he fulfilled his obligation to self-report his prior discipline.

[9] The court has had no prior dealings with the Silvermans.   They did not make any appearances before the undersigned in the Balagia case, as the magistrate judge handled all pre-trial motions that were filed.

requirements, or voluntary resignation unrelated to a disciplinary proceeding or problem.

The procedures for instituting reciprocal discipline are set forth in Local Rule AT-2(b)(2).  Rule AT-2(b)(2) mandates that once a court is informed of discipline in another court, it must issue an order directing the attorney to show cause within 30 days why the imposition of identical discipline should not be imposed in this district.  Rule AT-2(b)(2) also sets forth the following five defenses an attorney may raise in response to a show cause order:

> that the procedure followed in the other jurisdiction deprived the attorney of due process; that the proof was so clearly lacking that the court determines it cannot accept the final conclusion of the other jurisdiction; that the imposition of the identical discipline would result in a grave injustice; that the misconduct established by the other jurisdiction warrants substantially different discipline in this court; that the misconduct for which the attorney was disciplined in the other jurisdiction does not constitute professional misconduct in this State or in this court.[10]

Local Rule AT-2(b)(2).  "If the attorney fails to establish one or more of the [five defenses,] the court *shall* enter the identical discipline to the extent practicable."  Local Rule AT-2(b)(2).

In response to the discipline he received in the Western District of Pennsylvania, Silverman has asserted the following defenses:  (1) the procedure followed in the Western District of Pennsylvania deprived Silverman of due process and (2) Local Rule AT-2 does not contemplate reciprocal discipline for the revocation of *pro hac vice* status in another federal court.  In response to the discipline he received in the Western District of Texas, Silverman has asserted the following defenses:  (1) the procedure followed in the Western District of Texas deprived Silverman of due process and (2) the misconduct established by the Western District of Texas warrants substantially

---

[10] Although Silverman did not raise it as a defense, the proof in both cases was more than sufficient to accept the court's final conclusion.  Further, in both cases, the misconduct for which Silverman was disciplined constitutes professional misconduct in the Eastern District of Texas as well as the State of Texas.

different discipline in this court.  In response to both disciplinary actions, Silverman maintains that

the imposition of any discipline in this district would deprive his client, Balagia, of his counsel of

choice and would result in grave injustice.

        1.     <u>Western District of Pennsylvania Due Process</u>

In support of his argument that he did not receive due process in the Western District of

Pennsylvania, Silverman avers that he did not receive adequate notice of the conduct at issue, that

he was not given an opportunity to be heard, and that the court did not follow its own rules when

issuing its contempt order and ultimately revoking Silverman's *pro hac vice* status.

"Membership in the bar is a privilege burdened with conditions." *Theard v. United States*,

354 U.S. 278, 281 (1957) (quoting *In re Rouss*, 116 N.E. 782, 783  (N.Y. 1917)).  Moreover,

"wrongful personal and professional conduct, wherever committed, operates everywhere." *Selling*

*v. Radford*, 243 U.S. 46, 49 (1917).  Thus, "[a] federal court . . . should recognize, and give

effect to, the 'condition created by the judgment of the [another] court unless, from an intrinsic

consideration of the [] record,' it appears that . . . the [other court's] proceeding was wanting in

due process . . ." *In re Stamps*, 173 F. App'x 316, 317 (5th Cir. 2006) (quoting *Selling*, 243 U.S.

at 46); *see In re Ruffalo*, 390 U.S. 544, 551 (1968) (noting that disbarment proceedings are

quasi-criminal in nature and therefore, an attorney is entitled to due process).

"Procedural due process requires that an attorney be given fair notice of the charges against

him and an opportunity to be heard in an attorney disciplinary proceeding." *In re Sealed*

*Appellant*, 77 F.3d 479 at *4 (5th Cir. 1996) (unpublished table decision).  Here, Silverman

contends that he did not receive adequate notice of the conduct at issue.  The court has reviewed

excerpts of the trial transcript in *United States v. Mishra*.  It is apparent from those excerpts that

Silverman was repeatedly given oral warnings about his conduct and that Judge Bissoon was more than forgiving of numerous instances of misconduct early on in the trial.   The majority of Silverman's misconduct involved his failure to follow the court's pre-trial evidentiary order.   At one point, Judge Bissoon asked Silverman to explain the court's order.   Silverman was unable to do so.   Further, Judge Bissoon entered a written order outlining the charged conduct and ordering Silverman to pay a sanction.   Silverman had the opportunity but failed to appeal this order. Additionally, before revoking Silverman's *pro hac vice* status, the court granted Silverman five additional weeks to prepare a response.   At no point over those five weeks or in his response did Silverman ever argue that the court was unclear about what misconduct was at issue.

Silverman also maintains that he never received notice that the court was contemplating revoking his *pro hac vice* status.   This argument has no merit.   The court considered revoking Silverman's *pro hac vice* status mid-trial, and even stated it would have done so if it had been convinced that competent counsel was prepared to continue in his absence.   In addition, on March 15, 2016, upon learning that Silverman had not complied with the court's contempt order of February 9, 2016, the Government reinstated a prior request that the court revoke Silverman's *pro hac vice* admission and subsequently renewed its request that the court revoke his *pro hac vice* status in another filing.   (Doc. Nos. 364 & 469).   Thus, it is clear from the record that Silverman was given adequate notice of the conduct at issue and the discipline the court was considering.

Next, Silverman asserts that he was not given an opportunity to be heard because the court never held an oral hearing on the Government's motion.   Silverman fails to cite any authority supporting the proposition that he was entitled to an oral hearing as opposed to an opportunity to be heard, and the publicly available docket entries make it apparent that Silverman was afforded

a constitutionally adequate opportunity to be heard.  Moreover, "[s]ince the misconduct alleged

occurred in the court, there was no need for elaborate proof of the facts." *NASCO, Inc. v.*

*Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 707 (5th Cir. 1990), *aff'd sub nom. Chambers*

*v. NASCO, Inc.*, 501 U.S. 32 (1991).  Additionally, "the very nature of due process negates any

concept of inflexible procedures universally applicable to every imaginable situation." *Crowe*,

151 F.3d at 231 (quoting *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 895

(1961)); *see Patterson v. New York*, 432 U.S. 197, 210 (1977) ("Traditionally, due process has

required only the most basic procedural safeguards be observed."); *Link v. Wabash R.R. Co.*, 370

U.S. 626, 632 (1962) ("[A]dequacy of notice and hearing respecting proceedings that may affect

a party's rights turns, to a considerable extent, on the knowledge which the circumstances show

such party may be taken to have of the consequences of his own conduct.").  Finally, "[a]ttorneys

facing disciplinary proceedings are not entitled to receive all the guarantees afforded the accused

in a criminal case." *In re Stamps*, 173 F. App'x at 317 (citing *Sealed Appellant 1 v. Sealed*

*Appellee 1*, 211 F.3d 252, 254 (5th Cir.2000)); *see In re Smith*,[11] 123 F. Supp. 2d 351, 354 (N.D.

Tex. 2000), *aff'd*, 275 F.3d 42 (5th Cir. 2001) (rejecting an attorney's argument that he was

---

[11] The facts in *Smith* are complicated and set forth over several published opinions.  The *en banc per curiam* opinion, which referred the case to the three-judge panel that issued the above cited opinion detailed much of the procedural background.  Of significance to this case is the fact that Smith was given an oral hearing prior to his suspension by the United States Court of Appeals for the Tenth Circuit on November 29, 1993.  *In re Smith*, 100 F. Supp. 2d 412, 414 (N.D. Tex. 2000).  He was not, however, granted an evidentiary hearing when the court disbarred him for violating the suspension order three years later.  *Id*.  When *Smith* was reviewed by the Fifth Circuit, the court stated:  "Having reviewed the record of Smith's disciplinary proceedings in the district court and in the Tenth Circuit, we find no constitutional violation and no abuse of discretion in the district court's decision to disbar Smith."  275 F.3d at 42.  While *Smith* does not stand for the proposition that the failure to give an attorney the opportunity to present evidence at an oral hearing, alone, is never inconsistent with the due process, it supports the conclusion that the procedures followed by the Western District of Pennsylvania, in this case, comport with the due process requirements of the Constitution.

entitled to a jury trial or full evidentiary hearing before he could be disbarred).  Indeed, "due process does include notice and an opportunity to be heard in these cases, only rarely will more be required." *Sealed Appellant 1*, 211 F.3d at 254.

The court has reviewed the records of the proceedings in the Western District of Pennsylvania.  It is clear from these records that Silverman was repeatedly given oral notice of his misconduct and the punishment the court was considering over the course of the two-week trial.  In each instance, Silverman was given an opportunity to respond orally on the spot.  At one point, the court requested briefing from the Government on whether it was appropriate to revoke Silverman's *pro hac vice* status mid-trial.  Silverman filed a written objection to revocation of his *pro hac vice* status.  Silverman was also allowed to give sworn testimony regarding his good faith during the trial, and Daphne was permitted to argue on his behalf.  The court found Silverman's testimony not to be credible.  On February 9, 2016, Silverman was given additional notice in the form of a written sanction order.  Silverman had the opportunity to appeal this order but chose not to do so.  He was then given five weeks to prepare a written response as to why his *pro hac vice* status should not be revoked or comply with the court's sanction order.[12]  Silverman filed two written responses.  In light of these facts, this court finds no constitutional violation in the Western District of Pennsylvania's decision to revoke Silverman's *pro hac vice* status.  *See In re Jones*, 275 F. App'x 330, 331 (5th Cir. 2008) (rejecting an attorney's argument that he was denied due process in a Louisiana proceeding because he was not afforded oral argument prior to his disbarment).

---

[12] The evidence offered in this proceeding indicates that Daphne, who was also sanctioned by the Western District of Pennsylvania, attempted to pay her sanction in an effort to show good faith.  There is no indication that Silverman attempted to do the same.

Silverman's final argument is that the Western District of Pennsylvania denied Silverman due process by failing to follow its own local rules.  As an initial matter, it appears that this statement is misleading.  Regarding the summary contempt order, the record reflects that the court followed the proper procedure as set forth in Federal Rule of Criminal Procedure 42(b).  Regarding the revocation of Silverman's *pro hac vice* status, it appears that the court elected to exercise its inherent authority in lieu of relying on the local rules.  While this may not be the preferred method for disciplining attorneys, the court was certainly within its discretion to utilize its inherent power.  *See NASCO, Inc.*, 501 U.S. at 46 ("We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above.").  Further, "[w]hether the procedures were adequate under [the Western District of Pennsylvania's local rules] is not a proper question for this court." *In re Stamps*, 173 F. App'x at 317-18.  Accordingly, the court concludes that the process afforded to Silverman by the Western District of Pennsylvania comports with the Due Process Clause of the United States Constitution.

### 2.   Local Rule AT-2 and Revocation of *Pro Hac Vice* Status

Silverman contends in a two-fold argument that Local Rule AT-2 does not contemplate discipline for the revocation of *pro hac vice* status by another federal court.  First, Silverman avers that because *pro hac vice* status applies only to a particular case, there can be no "identical discipline."  Second, Silverman asserts that Local Rule AT-2 did not require him to report the revocation to the Eastern District of Texas.  This proceeding is limited to a determination of whether reciprocal discipline should be imposed.  The same issue would have been before the court even if Silverman had self-reported the prior disciplinary actions, albeit at a different

juncture.  *See* Local Rule AT-2(b)(2).  The question of whether Silverman was required to report

this discipline, and whether his failure to do so should subject him to additional sanctions, will be

referred to the Chief Judge in accordance with Local Rule AT-2(d)(2)(A).  Therefore, the court

will not address Silverman's second point.

With regard to Silverman's first argument, "local rules have the same force and effect as

law, and are binding upon the parties and the court until changed in the appropriate manner." *In

re Adams*, 734 F.2d 1094, 1098 (5th Cir. 1984).  Nevertheless, "[c]ourts have broad discretion

in interpreting and applying their own local rules adopted to promote efficiency in the court." *Id.*

at 1102.  This discretion, however, is limited by statute (28 U.S.C. § 2071), the Constitution, and

the supervisory authority of the United States Supreme Court.  *See Frazier v. Heebe*, 482 U.S.

641, 646 (1987).

Here, Local Rule AT-2(b)(1) provides that reciprocal discipline shall issue for any attorney

who "loses, either temporarily or permanently, the right to practice law before any state or federal

court for any reason" other than for specific reasons inapplicable here.  The use of the language

*right to practice law* and *for any reason* suggests that the rule was designed to apply to all

situations where the discipline of an attorney results in that attorney being unable to practice law

before that court.  By its plain language, this would include the revocation of admission *pro hac

vice*.  Further, Local Rule AT-2(B)(2) provides that "the court shall enter the identical discipline

to the extent practicable."  The phrase, "to the extent practicable" provides the court with the

discretion to craft discipline that serves as the functional equivalent when, as here, "identical

discipline" is not technically feasible.  Therefore, the court rejects Silverman's invitation to

17

interpret Local Rule AT-2 so narrowly that it does not encompass the revocation of admission *pro hac vice*.

### 3.   Western District of Texas Due Process

Silverman contends that he was denied due process in the Western District of Texas because, even after he was afforded (1) notice of the allegations against him, (2) an opportunity to respond in writing to a disciplinary committee, (3) an opportunity to appear in person before the committee, (4) written notice of the committee's findings, and (5) an opportunity to submit written objections to the committee's findings, Chief Judge Garcia failed to assign the matter to a district judge for final determination as contemplated by Western District of Texas Local Rule AT-7(g). Judge Garcia, however, issued the final written order suspending Silverman. Silverman elected not to appeal that order. Further, nothing in Western District of Texas Local Rule AT-7(g) prevents Chief Judge Garcia from assigning himself, a district judge, to issue the final determination.[13] More importantly, however, "[w]hether the procedures were adequate under [the Western District of Texas's local rules] is not a proper question for this court." *In re Stamps*, 173 F. App'x at 317-18. Accordingly, the court concludes that the process afforded to Silverman by the Western District of Texas comports with the Due Process Clause of the United States Constitution.

---

[13] In Silverman's first written response (#4), he avers that Judge Garcia's failure to assign the matter to another district judge deprived him of an important opportunity to be heard, and, had he been given such an opportunity, he would have fully developed his mitigating evidence in a formal hearing. At the hearing in this proceeding, the court pointed out that Western District of Texas Local Rules AT-7(g) gives the district judge the discretion to hold an additional hearing, but nothing in the rule requires the judge to hold such a hearing. In his post-hearing briefing, Silverman does not address this issue.

4.    Substantially Different Discipline in this Court is Unwarranted

Silverman argues that the circumstances surrounding his Western District of Texas suspension warrants substantially different discipline in this court.   Particularly, Silverman contends that his failure to meet his professional obligations in that case resulted from Daphne's breast cancer diagnosis.   He further avers that since then, Daphne's condition has greatly improved and he is, once again, able to devote the time and attention necessary to meet his professional obligations.   The court has empathy for the Silvermans and the effect Daphne's diagnosis had on Silverman and their practice.   Further, the court was pleased to learn that Daphne's health has improved and that she has resumed the full-time practice of law.

The court, however, cannot conclude that the Eastern District of Texas would have imposed substantially different discipline on Silverman in light of his admission that he provided inadequate assistance of counsel to Nguyen, which Judge Lamberth characterized as "a shocking display of attorney misconduct."   Moreover, the court is aware of Silverman and Daphne's joint representation of Balagia and, after reviewing the docket and recent filings, the court is not convinced that Silverman's method of practice has improved to such a degree that different discipline by this court would be warranted.   Particularly, United States Magistrate Judge Christine Nowak warned the Silvermans that the special trial setting for February 4, 2019, would not be moved.   Despite this admonishment, the Silvermans failed to make arrangements for a conflicting civil trial date and instead asked the court to continue the criminal case on December 30, 2018.   Further, the Silvermans failed to retain a financial expert in a timely manner and instead attempted to use that to justify a continuance.   Additionally, the Silvermans waited until

shortly before trial to interview, or attempt to interview, foreign witnesses.[14]   In light of these considerations, Silverman has failed to persuade the court that the misconduct established in the Western District of Texas warrants substantially different discipline in this court.[15]

5.     Grave Injustice

Silverman's final argument is that the imposition of any reciprocal discipline would serve as a grave injustice to his client, Balagia.   Silverman avers that, if the court were to allow Daphne to continue to represent Balagia without him, it would be impossible for her to get new co-counsel adequately prepared to serve as second chair by April 8, 2019.   Although, the court questions the

---

[14] The Silvermans' motion for continuance was initially denied; however, the case was continued after it became apparent that additional time would be needed to undertake the necessary disciplinary inquiry.

[15] At the hearing, Silverman's counsel maintained that "there's nothing in Mr. Silverman's past that indicates that he had ever been dilatory or not prepared." This statement is simply inaccurate. *See*, *e.g.*, *United States v. Fisch*, No. CRIM. H-11-722, 2014 WL 3735571, at *4 (S.D. Tex. July 25, 2014) (Silverman filed a notice of appearance 17 days before the trial of a case that had been on the court's docket for more than three years was scheduled to begin and requested a continuance, which was denied. He failed to comply with the court's order to respond to a motion to quash by a given deadline. Ultimately, Silverman was disqualified from the case 10 days after his initial appearance due to a conflict of interest);   *In re Silverman*, 135 S.W.3d 730, 731 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (Silverman was found to be in contempt of court when, after repeated warnings, he failed to file a brief on behalf of a client who had been convicted of murder and sentenced to life in prison and failed to respond to a show cause order.).   The court's research has also revealed that Silverman was found in contempt of Court by the Harris County Criminal Court at Law Number 2 for failing to appear in October 1999. *Texas v. Silverman*, No. 9944798 (Co. Ct. at Law No. 2, Harris County, Tex. Nov. 22, 1999). A Show Cause order was also issued against Silverman by the 180th Judicial District Court of Harris County in February 2006 as a result of Silverman's failure to abide by court orders. *Texas v. Silverman*, No. 1058630 (180th Dist. Ct., Harris County, Tex. Feb. 21, 2006).   In July 2006, the 180th Judicial District Court of Harris County issued a second show cause order as a result of Silverman's intentionally and knowingly failing to appear for a hearing. *Texas v. Silverman*, No. 1074974 (180th Dist. Ct., Harris County, Tex. July 18, 2006).   It also appears that Silverman may be delinquent on certain property taxes. *See Harris County v. Norman J. Silverman*, Case No. 2016-80750 (269th Dist. Ct., Harris County, Tex.). Additionally, the Western District of Texas had previously issued a show cause order after Silverman failed to appear for docket call in October 2004.   *In re: Silverman*, Case Number 2:4-cv-90. It also appears that Silverman failed to file an appellate brief for his client, Christopher Gutierrez, in January 2017.   *See Gutierrez v. State*, Case No. 01-16-00570-CR (Tex. App.—Houston [1st Dist.] Jan. 19, 2017) (Radack J. acting individually).

accuracy of such a claim;[16] the issue is now moot. On February 25, 2019, the undersigned transferred the Balagia case to Judge Mazzant.  In light of the fact that Judge Mazzant is new to this case, he will undoubtably undertake a review of the filings and set a new trial date that is appropriate in this situation.  In the interim, Daphne and new co-counsel, if Balagia chooses to retain another attorney, will have adequate time to prepare for trial.  Therefore, the only remaining consideration is whether Balagia's Sixth Amendment rights outweigh this court's interest in ensuring that the attorneys who come before it do so in an ethical manner that does not impede the orderly administration of justice.

   "[T]he Sixth Amendment requires the courts to respect a defendant's own particular choice of counsel." *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976), *cert. denied*, 429 U.S. 1104 (1977).  This right, however, is not absolute.  *See United States v. Nolen*, 472 F.3d 362, 375 (5th Cir. 2006); *United States v. Salinas*, 618 F.2d 1092, 1093 (5th Cir.), *cert. denied*, 449 U.S. 961 (1980); *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir.), *cert. denied*, 444 U.S. 843 (1979); *Dinitz*, 538 F.2d at 1219.  Indeed, this "right is specifically limited by the trial court's power and responsibility to regulate the conduct of attorneys who practice before it." *Kitchin*, 592 F.2d at 903.  To this end, the court's duty to ensure the orderly administration of justice by

---

[16] Attached as Exhibit 1 to Silverman's Supplemental Response (#14) is the statement of Daphne Silverman.  The statement details her qualifications and the efforts she has undertaken to prepare for trial, noting that she has "devoted time virtually every day for over a year to investigating the facts and researching the law on Balagia's case."  The statement also discusses how she and Silverman are a team and that their skill sets complement each other.  The statement, however, is devoid of any facts which indicate that replacing Silverman would result in duplicative efforts or that Silverman is uniquely qualified to try the case.  Daphne merely opines that Silverman has an exceptional ability to process volumes of data about a witness, to identify contradictions in the different pieces of evidence, and to develop questions that can expose the truth.  She adds that she has personally never seen any attorney better able to cross-examine dishonest witnesses and that she expects many dishonest witnesses in the case.  Yet, many able attorneys who practice in the Eastern District of Texas have similar skills.  Under the circumstances, her argument that Silverman is irreplaceable is unpersuasive.

regulating the conduct of attorneys must be balanced against a defendant's Sixth Amendment right to his choice of counsel as "a prerequisite to disqualifying counsel of the defendant's choice." *Nolen*, 472 F.3d at 375.   Nevertheless, "the Sixth Amendment's right to choice of counsel merely informs judicial discretion[,] it does not displace it."   *Dinitz*, 538 F.2d at 1219.

Here, the court has reviewed the transcript of the proceedings in the Western District of Pennsylvania as well as the proceedings in the Western District of Texas.   The court has also reviewed the written submissions in both cases.   Further, the court has considered the following:  Silverman's written responses to the show cause order; the attached letters of support; the arguments of counsel; the statements made by Balagia concerning the quality of the Silvermans' representation; Daphne's statement regarding the Silvermans' practice; and Silverman's demeanor at the show cause hearing.[17]  Silverman, it appears, fails to appreciate the extent of his ethical duties and lacks a genuine understanding of the scope of his unprofessional conduct, including the negative effects it has had on his clients, opposing counsel, the court, and the orderly administration of justice.   Silverman has consistently relied on a myriad of excuses or explanations in an attempt to shift blame or otherwise justify his own misconduct in a variety of situations.

All things considered, it appears that Silverman will likely engage in similar conduct if he is permitted to continue representing his current clients in the Eastern District of Texas.   Such conduct, if repeated, would undoubtedly have an adverse effect on the ability of the courts of the

---

[17] At the show cause hearing, Silverman seemed to be unable to sit still.  He continually squirmed in his chair, often half-rising, and, on occasion, standing up and whispering loudly in his lawyer's ear. He frequently rolled his eyes in response to statements and questions from the court directed at his attorney.  He repeatedly cleared his throat in an audible and disruptive manner.  At one point, Silverman almost entirely lost the ability to control himself, stood up, and attempted to interject himself into a discussion between counsel and the court.

Eastern District of Texas to ensure the administration of justice in an effective and fair manner. Further, it is likely that such conduct, if repeated in this district, could harm Silverman's clients.[18]

The court, however, is extremely hesitant to disqualify a defendant's counsel of choice. Nevertheless, such disqualification is necessary in this case in order to ensure the orderly administration of justice. In this situation, Daphne has already taken on the role of lead counsel. All of the pre-trial motions filed on behalf of Balagia were filed by Daphne. Daphne has repeatedly appeared on Balagia's behalf to argue these motions before Judge Nowak. Daphne's Statement (Doc. No. 14-1) indicates that she has reviewed all the discovery in this case; researched and interviewed expert witnesses; filed FOIA requests and subpoenas; hired investigators in Colombia, Florida, Louisiana, and Texas; interviewed witnesses in person; drafted discovery, *James*, and other defense motions; and communicated with the Government regarding discovery. It is unclear what, if any, contribution Silverman has made to Balagia's case to date. At the show cause hearing, Daphne represented to the court that her health would not be a hindrance to her continued practice of law or her representation of Balagia. She further indicated that she recently tried a civil case with the assistance of an attorney other than Silverman. In this matter, Daphne was also facing the possibility of identical discipline with regard to the revocation of her *pro hac vice* status by the Western District of Pennsylvania. The court has determined, however, that reciprocal discipline in her case would result in a grave injustice and, therefore, has declined to

---

[18] The court has considered Silverman's arguments regarding the propriety of the Government's advisories to the court and its motivation for filing them. Silverman maintains that the "oppressive timing" of the Government's actions and its potential interference with the attorney-client relationship is a factor which should tip the scale in favor of permitting Silverman to continue his representation of Balagia. Even assuming the motivation Silverman attributes to the Government is correct, the outcome of this proceeding would, nevertheless, remain the same. Silverman, once again, ignores the fact that he had an obligation under the Local Rules to self-report. Had Silverman fulfilled this obligation, there would have been nothing for the Government to report. Thus, fault here lies solely with Silverman.

impose it. In light of the fact that Daphne may continue representing Balagia and that a new second chair will be afforded adequate time to prepare by Judge Mazzant, Balagia's Sixth Amendment right to counsel of his choosing is adequately protected when it is balanced against this court's obligation to ensure the orderly and effective administration of justice in the Eastern District of Texas.

6.    Reciprocal Discipline

Local Rule AT-2(b)(2) mandates that this court enter "identical discipline to the extent practicable." In the case of the 120-day suspension issued by the Western District of Texas, reciprocal discipline requires a 120-day suspension. In the case of the revocation of Silverman's *pro hac vice* status by the Western District of Pennsylvania, identical discipline to the extent practicable is as follows: (1) Silverman is removed from representing any client for whom he is currently counsel of record in the Eastern District of Texas;[19] and (2) the Clerk of the Court shall remove Silverman from the roll of attorneys admitted to practice in this district. Additionally, Silverman may not seek re-admission to the Eastern District of Texas until the expiration of 120 days from the date of this order and the conclusion of any additional disciplinary proceedings instituted as a result of this court's report to the Chief Judge regarding this matter.[20]

---

[19] Silverman currently represents James Morris Balagia in Case Number 4:16-cr-176 and Arturo Elizondo in Case Number 1:17-cr-153. The court has already addressed the Sixth Amendment concerns regarding Silverman's representation of Balagia. Silverman has failed to raise the issue regarding his representation of Elizondo. Should Silverman's disqualification implicate the Sixth Amendment in that case, Judge Heartfield can consider the effect of this order on Elizondo.

[20] The court will forward a copy of this order, the transcript of the show cause hearing, and the documentary evidence discovered in the course of the court's investigation to the Chief Judge of the Eastern District of Texas to implement the procedures outlined in Local Rule AT-2(d)(2)(A).

24

III.   <u>Conclusion</u>

Consistent with the foregoing analysis, it is ORDERED that Norman Silverman, Texas Bar Number 00792207, be suspended from the practice of law in the Eastern District of Texas beginning February 28, 2019, and lasting for a period of 120 days.  It is also ORDERED that Silverman is removed from the representation of James Morris Balagia in Case Number 4:16-cr-176 and Arturo Elizondo in Case Number 1:17-cr-153 in the Eastern District of Texas.  It is further ORDERED that the Clerk of the Court remove Norman Silverman from the roll of attorneys admitted to practice in this district and unseal the style of this proceeding and this order. Should the Eastern District of Texas determine that additional disciplinary proceedings are necessary upon considering this court's order, Silverman shall not seek re-admission to practice in this district until those proceedings are concluded.

Furthermore, Silverman is ORDERED to review the local rules for all federal and state courts in which he is admitted to practice law.  If the local rules of any court in which Silverman is admitted to practice law impose a duty on an attorney to report discipline from other courts, Silverman is ORDERED to make the appropriate disclosures to those courts on or before March 8, 2019.  Should Silverman seek readmission to the Eastern District of Texas, his application must contain satisfactory proof that he has fulfilled his self-reporting obligations in every court in which he is admitted to practice law.

Additionally, Silverman's Motion to Disqualify the Honorable Judge Marcia Crone (#8) and Second Motion to Disqualify the Honorable Judge Marcia Crone (#13) are DENIED. Silverman's Motion to Disclose Source of Information (#6) and Motion to Continue (#7) are DENIED as moot.

SIGNED at Beaumont, Texas, this 28th day of February, 2019.

_Marcia A. Crone_
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE